PETER WILSON, APPELLANT, *v.* FRED J. KIESEL AND OTHERS, RESPONDENT.

PETER WILSON, RESPONDENT, *v.* FRANK J. CANNON AND OTHERS, APPELLANTS.

CORPORATIONS.—CREDITORS' BILL.—UNPAID SUBSCRIPTION.—DELIN-QUENT STOCKHOLDER. — COUNTER-CLAIM. — A delinquent sub-scriber to capital stock of a corporation, who is also a creditor of the corporation, can, after issuance of execution upon his claim reduced to judgment, maintain an action against the corporation and delinquent subscribers to capital stock, but he must suffer a deduction from his claim, proportioned to the amount delinquent on his own stock.

CREDITORS' BILL.— JUDGMENT.— DEFENSE OF FRAUD.— Where it appears that a claim against a corporation has been reduced to judgment by consent of the attorneys for the corporation, acting under instructions from the pres dent of the corporation, who is the real owner of the claim, and that the claim for which judgment was admitted was exorbitant, and that the stockholders never had an opportunity to contest the claim over whose validity there is a real contention; *held*, that a judgment upon the creditors' bill against the stockholders should be reversed in order to permit the stockholders to con-test the claim before the lower court.

CORPORATIONS.— JUDGMENT.— STOCKHOLDERS.— In 'the absence of fraud or mistake in obtaining a judgment against a corporation, the judgment is conclusive upon the stockholders, but otherwise if fraud or mistake is alleged, which defense belongs to stockholders sued upon delinquent subscriptions, and not to the corporation alone, and may be set up by cross-bill to a creditors' bill upon the judgment.

ASSIGNMENT OF CONTRACT.— DELIVERY.— AGENCY.— Where an assignment of a claim is made to B. who is taking the assignment for himself and other parties but in his own name, and the assignment is afterwards delivered to one of those other parties, under circumstances showing that B. must have known of such delivery and must have consented thereto, such delivery is good as to B.

ACTION.—REAL PARTY IN INTEREST.—ASSIGNMENT.—Where a claim has been assigned after suit brought the assignee has the right to continue the suit in the name of his assignor, but when judgment is recovered thereon, a creditor's bill based upon that judgment must be brought in the name of the assignee, and when brought in the name of the assignor, no amendment as to parties can cure the defect, but the suit must be dismissed.

CROSS-APPEALS from a judgment of the district court of the fourth district and from an order refusing a new trial, Hon. James A. Miner, judge. The opinion states the facts, but the following details are noticed.

The complaint alleged the incorporation of the Ogden Power Company, the amount of its capital stock, the subscriptions of defendants thereto, the insolvency of the corporation, the recovery of the judgment, the issue of execution, the return thereon and the delinquent subscriptions as its sole assets.

The answer denied the delinquency of the defendants, the insolvency of the corporation, alleged payment of subscriptions, that plaintiff was delinquent himself, that he was not the real party in interest.

Kiesel, Carnahan and Anderson, by way of cross-complaint, alleged that the entry of the judgment against the

corporation was unauthorized by the board of directors, but was under the direction of H. H. Henderson, who had no authority so to do, and that shortly afterward Henderson and his partner Brinker purchased said judgment from said Wilson and that they were still the owners thereof, and that neither of said defendants filing the cross-complaint were ever officers of said corporation, and that if the action of Wilson against the corporation had been defended upon its merits, no greater sum than $2,000 would have been awarded against it, that Henderson consented to said judgment expecting shortly to purchase it, knowing that no more than $2,000 was due Wilson, and for the purpose of secretely defrauding the stockholders, which fraudulent purpose was well known to Wilson, that a majority of the directors were absent from the Territory, and prayer was for cancellation of the judgment.

The answer to the cross-complaint denied each and every of its allegations. The cause was referred to a referee, who tried the cause and made his findings. The findings were adopted by the court, and were as follows:

They set out the judgment and execution against the corporation, the incorporation and capital stock and number of shares of the corporation, the signing of the articles of agreement by the various defendants, that the only asset of the corporation was the unpaid subscriptions, that Kiesel, Carnahan and Anderson had fully paid, that Wilson was a subscriber for 25 shares and a balance of $2,259 was due on his subscription which he agreed should be credited on the judgment, that plaintiff agreed to a reduction of about $9,000 on the judgment, that pending the action of Wilson against the corporation Wilson executed a written assignment of his claim to Brinker, which was never delivered, and it was understood that said claims should not pass to Brinker until the amount named therein had been fully

paid to Wilson and only $3,000 of that consideration had been paid, that in consenting to the judgment Henderson the president and the counsel for the corporation after diligent inquiry acted in good faith, and Henderson and Wilson never agreed in any way that said judgment should be entered for the benefit of Henderson or Brinker and that neither Brinker nor Henderson had any interest in the claim or to the indebtedness which was the subject of the judgment.

The next findings referred to the deed of Kiesel, Carnahan and Anderson to the corporation, the issuing of fully paid up stock therefor, the giving of the mortgage back, the foreclosure of the mortgage, the value of the land, that Wilson, the plaintiff, was a subscriber and had only paid 10 per cent. of his subscription, that Kiesel, Carnahan and Anderson had never been officers of the company, that there was nothing in the articles of incorporation that either of the subscribers should pay in anything other than money, that plaintiff never waived any unpaid subscription. The next findings referred to the taking of the judgment, which was a consent judgment for a valid claim, and was taken in good faith and execution issued thereon with the return of *nulla bona,* but the board of directors never authorized Henderson to consent thereto, and he instructed the regular attorneys of the company to consent. The next findings made an examination of the claim of Wilson and went into an examination of the validity of the various items, a waiver being made by plaintiff of about $9,000, and fixed the true amount due Wilson. The next findings set out the assignment mentioned in the opinion and found that two payments had been made thereon, that the assignment was negotiated by Henderson for himself, Garretson, Bigelow and Brinker, who had gotten a majority of the stock and

desired to control the corporation. The appeal of the defendants was on the judgment roll alone. The appeal of Wilson was from order refusing new trial.

From these findings it appears that the whole question as to fraud, amount of claim, and validity of the judgment was contested before the lower court and the master found against the defendants.

*Mr. A. R. Heywood,* for the appellants and respondents, Kiesel and others.

His brief argued at considerable length whether Kiesel, Carnahan and Anderson had paid up their stock, but since that point is not passed upon by the court, that part of the brief is omitted. The brief then proceeded to argue: That the judgment having been consented to by the attorneys under the instructions of the president without authority from the board of directors was invalid. *Wait* v. *Nashua Armory Association,* 14 L. R. A. 361; *Busenbak* v. *Busenbak,* 7 Pac. Rep. 245; *Schuster* v. *Rader,* 22 Pac. Rep. 505. The conduct of the president was fraudulent; *Richards* v. *McMillan,* 6 Cal. 419; *Potts* v. *Wallace,* 146 U. S. 689; *Page* v. *Naglee,* 6 Cal. 241; *Mills* v. *Scott,* 43 Fed. Rep. 455. The remission of part of the judgment does not help the plaintiff. *Central Trust Co.* v. *Bridges,* 57 Fed. Rep. 768. The plaintiff being a delinquent subscriber cannot maintain this action, for a set-off as to his unpaid subscription is not allowed. *Thompson* v. *Reno Savings Bank,* 7 Pac. Rep. 71; *Sawyer* v. *Hoag,* 17 Wall. 623. Wilson was not and is not the real party in interest. The assignment so shows on its face and parol evidence cannot modify it, and this is fatal to the action. *Dubbers* v. *Goux,* 51 Cal. 153; *Davis* v. *Mayor,* 14 N. Y. 506; *Smith* v. *Railway Co.,* 23 Wis. 267; *Galpin* v. *Lamb,* 29 Ohio St. 529; *Clark* v.

*Clark,* 20 Ohio St. 128. Pomeroy on Remedies, secs., 127, 128.

*Mr. Ogden Hiles, Mr. J. H. Macmillan* and *Messrs. Sutherland and Howatt* (of counsel), for the respondent and appellant Wilson.

This brief argued most fully the question as to the stock of Kiesel and others being paid up, but that is omitted. The brief in reply argued: This appeal is from the judgment roll alone and the findings must control as to the appeal of the defendants. The issues as to the insolvency, as to the amount of Wilson's claim and as to its fraudulency, as to the assignment of this claim, as to the good faith of Henderson, were all settled by the findings against the defendants, and those ultimate facts having been found, no finding of evidentiary facts tending to impeach the finding of an ultimate fact, including for its decision such evidentiary facts, will avail. *Smith* v. *Acker,* 52 Cal. 217; *Lucas* v. *Richardson,* 68 Cal. 618. Other points as to the execution were discussed and it was argued that no execution was necessary where a corporation was insolvent. *Enright* v. *Grant,* 5 Utah, 334; *Camden* v. *Doremus,* 3 How. 533; *Hodges* v. *Mining Co.,* 9 Oregon, 200. The return of the officer is conclusive. *Baines* v. *Babcock,* 95 Cal. 581.

SMITH, J.:

This is an action by plaintiff who claims to be a judgment creditor of the Ogden Power Company against the defendants who are alleged to be delinquent subscribers to the capital stock of that company. It is alleged that the Ogden Power Company is a corporation and is insolvent; that plaintiff's judgment is unpaid; that this action is

brought on behalf of plaintiff and the other creditors of the corporation.

Defendants Kiesel and twenty-six others answered denying the material allegations of the complaint and alleging by way of affirmative defense that plaintiff was a delinquent subscriber to the capital stock of the Ogden Power Company. Kiesel, Carnahan & Anderson also plead payment of their subscription, and by way of cross-complaint defendants alleged, in substance, that plaintiff's judgment, on which this action was founded, was fraudulently obtained by collusion with the president of the Ogden Power Company, who with one Brinker, had purchased the claim on which the judgment was rendered and who consented to the judgment fraudulently.

It was further alleged that no more than $2,000 was due the plaintiff on the claim sued on, whereas the judgment was rendered for $22,405.15. Defendants asked that plaintiff's judgment be cancelled and that he take nothing. Plaintiff answered the cross-complaint.

The cause was tried by a referee, who reported findings of fact and conclusions of law on which judgment was entered, dismissing the cross-complaint and giving judgment for plaintiff against all of the defendants except Kiesel, Carnahan and Anderson and as to those three the judgment was against the plaintiff on the ground that they had paid their subscription.

Plaintiff appeals from the judgment in favor of Kiesel, Carnahan and Anderson, and defendants Cannon and twenty-three others appeal from the judgment against them.

The history of the transactions out of which this litigation arose, as disclosed by the record, is in brief as follows:

The Ogden Power Company was incorporated on April 11, 1890. On March 1, 1890, Wilson had entered into three contracts to construct certain works, which were intended for the benefit of this corporation subsequently

organized. Work was commenced by Wilson, March 14, 1890, and he ceased work on May 13, 1890. On May 15, 1890, plaintiff began an action against the Ogden Power Company to recover $22,405.15. On June 1, 1890, H. H. Henderson became president of the Ogden Power Company, and shortly afterwards the corporation filed answer denying Wilson's claim and this answer was verified by Henderson. On September 22, 1890, Wilson sold, assigned, transferred and made over to Joseph Brinker all his right, property, claim and interest in and to all claims and demands against the Ogden Power Company.

This assignment was for a sufficient consideration, was in writing and was placed in the safe of Henderson in an office occupied by Brinker, Anderson and Wilson's attorney. This assignment was negotiated for and obtained by Henderson for the joint benefit of Brinker, Henderson and Mr. Garretson of Sioux City, Iowa, and Mr. Bigelow of Ogden. On October 25, 1890, Kimball & Allison, attorneys for the Ogden Power Company in the suit of Peter Wilson against it, appeared in open court and consented to a judgment in favor of Wilson for the full amount claimed by Wilson. This is the judgment on which this suit is founded. Kimball & Allison consented to this judgment under the instruction and direction of Henderson, president of the company.

The board of directors of the power company had no knowledge of such instructions being given.

On June 17, 1892, execution issued on this judgment and on June 22, 1892, it was returned wholly unsatisfied. On June 23, 1892, this action was commenced.

Referring again to the organization of the corporation, Kiesel, Carnahan and Anderson each severally subscribed to the capital stock of the Ogden Power Company the sum of $5,000 and the plaintiff Wilson subscribed $2,500 to

such capital stock; Wilson has paid $250 on his subscription and no more.

On April 26, 1890, Kiesel, Carnahan and Anderson conveyed to the Ogden Power Company land necessary for its use, of the value of more than $40,000, and accepted in payment therefor $15,000 in paid-up stock in the company and $25,000 in notes of the company secured by mortgage on the land conveyed.

This mortgage has been foreclosed, and Kiesel, Carnahan and Anderson have purchased the land under the foreclosure sale.

At the time plaintiff commenced this suit he had in his possession belonging to the Ogden Power Company, personal property of the value of $2,740. At the time the judgment in favor of Wilson was rendered he had received money and property on his claim that should have been credited and was not, to the amount of $6,589.50.

The total amount due Wilson, allowing none of the above credits on June 1, 1890, according to his own claim (which is on its face in one or two particulars erroneous in his favor) is $18,332.41.

That at the date the judgment in his favor was rendered if he be charged with his own unpaid subscription and with the credits he admits to be correct, and with the property of the power company which he had in his possession, the amount due him could have been no greater sum than $6,752.91.

The questions raised on the appeal of Cannon and others from the judgment in favor of plaintiff and against them are as follows:

1. Can plaintiff, while a delinquent subscriber himself, maintain this action in equity against other delinquent subscribers?

2. Was the judgment at law in Wilson's favor, taken by

consent October 25, 1890, for $22,405.15, fraudulent and void?

3. If that judgment is valid can plaintiff maintain an action on it? Is he the real party in interest?

The question on plaintiff's appeal is:

Did Kiesel, Carnahan and Anderson pay their subscription to the corporate capital by the conveyance of land made April 26, 1890?

Upon the first question the defendants insist that plaintiff cannot ask equity to give him relief against them unless he himself first do equity by paying up his own delinquent subscription.

While the question is argued at considerable length in the briefs for both plaintiff and defendant, neither side cite any authority on the point. We have, however, examined the matter as fully as our time and facilities permit.

The case of *Bissit* v. *Kentucky River Navigation Co.*, 15 Fed. Rep. 353, holds squarely that such delinquent stockholder can maintain such action. To the same effect is note 2, page 215 of Cook on Stock and Stockholders. On the contrary, the supreme court of Maryland in the case of *Weber* v. *Fickey*, 47 Md. 199, holds that he cannot maintain such action. We are inclined to adopt the rule declared in *Bissit* v. *Kentucky River Navigation Co.*, to-wit: that he may maintain the action, but that he must contribute *pari passu* with the other stockholders to the payment of the amount due him, if any.

The second question on defendant's appeal, to-wit: Was Wilson's judgment fraudulent, presents many intricate and difficult questions of fact. In the first place, as shown by the statement of facts already made, it is apparent that according to the facts found and shown in the record, this judgment was for a grossly exorbitant sum. It was reduced some $6,500 with the consent of plaintiff on the

trial of this case in the court below, but it should have been reduced for a very much larger sum, to-wit: $4,426.79, which has accrued as interest, etc., since the date of the judgment, also the amount of his unpaid subscription, $2,250, and in equity he ought also to be charged with the property in his hands of the value of $2,740. So that in addition to the credit on the judgment made by the court below it would appear from the record before us. that the amount of the judgment ought to have been. reduced by the further sum of $9,396.79.

We do not intend to adjudicate the question as to the amount due plaintiff in this opinion, but expressly disclaim any intention to make such adjudication. But the above facts appear from the record before us and are referred to in this connection upon the question as to whether or not the judgment sued on in this action is fraudulent or not.

In addition to the fact that the judgment is apparently for too large a sum, is the further fact that on September 22, 1890, this claim, on which the judgment is founded, was assigned, as we have seen, to Brinker, who was at the time jointly interested with Henderson in the purchase. And the judgment was consented to on October 25, 1890, at the instance and on the authority of Henderson, without the knowledge or consent of the board of directors of the power company.

In other words, it appears that Henderson was interested in obtaining this judgment against the power company and yet as president of the company he consented to its entry or rather directed the company's attorneys to consent, which they did. Is such a judgment, so entered, conclusive on the stockholders? We think not. In the language of Judge Baxter in *Bissit* v. *Ky. Riv. Nav. Co., supra,* "We are satisfied that the complainant's judgment, to put it mildly, was unfairly obtained, and for an amount greatly in excess of the sum due."

Now in this suit is the first opportunity the stockholders have had to inquire into the validity of plaintiff's claim against the corporation, and, all other matters aside, the judgment in plaintiff's favor would have to be reversed in order to afford the stockholders an opportunity to contest this claim before a master or the court below. This was the course taken in the Bissit case above referred to, and seems to be abundantly supported by authority.

In the absence of fraud or mistake in obtaining judgment against the corporation, of course, the judgment is conclusive on the stockholders. *Henry v. Vermillion Ry. Co.,* 17 Ohio, 187; *Donworth v. Coalbaugh,* 5 Iowa, 300; *Came v. Brigham,* 39 Me. 35.

But if the judgment against the corporation was obtained by fraud or through collusion with the company's agents, the stockholders may obtain relief through equitable proceedings. Morawetz on Priv. Corp. sec. 619.

And the judgment may be impeached for fraud or collusion by cross bill in the action upon it. *Conway v. Duncan,* 28 Ohio St. 102; *Bank v. Wooster,* 1 Ohio St. 233.

There is, however, another question raised, which appears to call for an absolute reversal of the judgment in favor of plaintiff and an affirmance of that in favor of Kiesel, Carnahan and Anderson.

On September 22, 1890, the plaintiff, Peter Wilson, made and executed the following paper:

"This is to certify that I, Peter Wilson, of Ogden City, Utah, for and in consideration of the sum of five thousand ($5,000) dollars to me in hand paid and to be paid as hereinafter expressed, and five thousand dollars in stock or bonds to be delivered to me as hereinafter provided, or their value and equivalent in money, that is to say:

"Two thousand ($2,000) dollars and interest thereon from the 23d of August, A. D. 1890, paid at the date hereof.

"One thousand dollars to be paid thirty days from date

hereof; one thousand dollars to be paid sixty days from date hereof; one thousand dollars to be paid ninety days from date hereof.

"Also five thousand dollars in stock or bonds of the Ogden Power Company, a corporation, to be delivered as paid up stock or bonds thereof on or before the date for the last payment of money above, provided, however, that the assignee hereafter named or his assigns may pay the face value of such stock or bonds at his option in lieu of such stock or bonds, I have sold, assigned, transferred and made over and do hereby sell, assign, transfer, make over unto Joseph Brinker, all my right property, claim and interest in and to my said claim and demand against the Ogden Power Company in suit in the first judicial district court, Utah Territory, for work and labor done and materials furnished for said company upon the several contracts mentioned and set out in the complaint in said suit and that said Brinker may be substituted for me as plaintiff in the said suit.

"It is further understood that the stock so, as aforesaid, to be delivered to me shall be taken to include the twenty-five shares, the same heretofore subscribed for by me on which I have heretofore paid two hundred and fifty ($250) dollars, which latter sum is to be paid me in addition to the five thousand dollars hereinbefore provided to be paid as part of the consideration of this assignment.

"Witness my hand and seal this 22d day of September, 1890.

    "(Signed.)    PETER WILSON."

It is expressly found by the 49th finding of fact that this paper was made and executed at the instance and request and pursuant to negotiations conducted by Henderson with Wilson; that Henderson acted in the interest of himself, Brinker, Garretson and Bigelow and the assignment

was made for all of them, although it was taken in the name of Brinker alone.

By the 46th finding it is shown that Henderson and Brinker occupied a single room as an office and in this office there was a single safe which was the property of Henderson; that after the execution of the written assignment, it was delivered by Wilson to Henderson who put it in the safe and kept it up to January, 1893, when he delivered it to Ogden Hiles, Esq., who was attorney for Wilson and also for Brinker and Henderson.

In the 50th finding it is shown that Brinker paid three thousand dollars to Wilson on the consideration named in the assignment before October 25, 1890.

The court below found that these facts constituted no delivery of the writing and hence that Wilson's title to the claim did not pass. We cannot concur in that view. We hold that the delivery of this writing to the partner or joint owner of the obligee named in it, for the joint use and benefit of the person to whom it was delivered and the obligee named is a good delivery. Even a delivery to a disinterested third person for the obligee is a good delivery if assented to by the obligee. See Am. and Eng. Enc. of Law, vol. 5, p. 448 and cases cited in note.

It must be assumed that Brinker knew of the delivery to Henderson and assented to it. Because it is expressly found that he subsequently made the first two payments ($3,000) in accordance with its provisions.

Notwithstanding Wilson by this assignment parted with his title to the demand he had sued on, still his assignee had the right to prosecute that action at law against the corporation to judgment in the name of Wilson. We so held at the last term of court in the case of *Bank* v. *Hapgood, ante,* p. 85, 33 Pac. Rep. 241.

But here another suit founded on that judgment and

against other parties is brought in the name of Wilson. Can it be maintained? This precise question was before the supreme court of California in the case of *Dubbers* v. *Goux,* 51 Cal. 153, and was decided in the negative, and in the same case it is held that the complaint cannot be amended by the substitution of the real party in interest.

The statute of Utah, vol. 2, Comp. Laws 1888, sec. 3169, declares that every action must be prosecuted in the name of the real party in interest, except certain cases which do not in anywise affect the question at bar; this language does not admit of doubt as to its meaning. The real party in interest at the beginning of the action must prosecute it in his own name; it is not necessary to enlarge upon the reasons for this rule or to cite decisions under it; it is sufficient for us to know what the law is and it is our duty to enforce it.

We are also of the opinion that the complaint cannot be amended in this respect. The reasoning of the supreme court of California in *Dubbers* v. *Goux, supra,* on this point seems to us to be conclusive. It is sufficient for us to say that in the present case an action by the assignee of this judgment would present a wholly different issue to that tendered in the present action; it would in fact be a new and different action by the simple charge of plaintiffs. As the nominal plaintiff, Wilson, had no judgment or other cause of action against these defendants when he brought them into court, it is quite apparent that he cannot in justice complain if his action is dismissed at his cost, and the assignee cannot complain because he has never sought any judgment against the defendants. The apparently close relations between Wilson and his assignees does not in any way affect this conclusion except to emphasize the justice of it, and to add strength and color to the claim made at the bar that this action was not prosecuted in good faith.

We are of the opinion that the exceptions of defendants Cannon and others to the master's report of facts, and the assignment of error here, that on the facts found, the judgment below is against law, are both well taken, and that on this appeal the cause should be reversed and remanded to the court below with directions to dismiss the action.

This conclusion renders it unnecessary to pass on the question raised on plaintiff's appeal, as to whether or not Kiesel, Carnahan and Anderson had paid their subscription to the capital of the Ogden Power Company.

BARTCH, J., concurred.