HENRY GUND, APPELLEE, V. ELIAS BALLARD ET AL., AP-
PELLANTS.

FILED APRIL 19, 1905.   No. 13,305.

1. Equity: JUDGMENT: FRAUD. In a suit in equity between the stock-holders of a banking corporation, in process of voluntary liquidation, over the distribution of funds derived from its assets, a judgment rendered in another action brought by the corporation against a stockholder who was at the time the president, a director and one of the trustees selected to wind up the affairs of the bank by which the amount due from such stockholder to the corporation was adjudicated, which is relied upon by such stockholder in the equity action as a final adjudication of the amount due on such indebtedness, may be impeached by the other stockholders as having been obtained fraudulently or collusively.

2. Assignment: ASSUMPTION OF DEBT. In the action at bar, plaintiff, the president and one of the directors of the banking corporation, was a creditor of a firm who were also debtors to the bank and who became insolvent. In an adjustment of the matters between the officer of the bank in his individual right and the bank on the one hand, as creditors, and the debtor firm on the other, the president, acting for himself and the bank, secured an assignment and transfer of all the property of the debtors in his own name, and obligated himself to pay the indebtedness to the bank

by signing a note in its favor with one of the debtors, such indebtedness being carried for some time by renewals of the note thus executed. *Held*, Under the evidence as disclosed by the record, that his liability to the bank was not restricted to that of a mere surety, but as between him and the bank his obligation to pay the indebtedness was primary in its character.

3. **Fiduciary Relations:** FRAUD. Where a person occupies a fiduciary relation to a bank and its stockholders, and engages in litigation in which his individual interests are in conflict with those he represents in a fiduciary capacity, actual fraud is not essential in order to avoid the proceedings thus had and entered into.

4. **Trustee:** JUDGMENT:. CONCLUSIVENESS. While the affairs of a bank were in process of liquidation, the president, who was also a director acting as one of the trustees for the purpose of winding up its affairs, was made a defendant in an action brought by the corporation against himself and one other on a note in favor of the bank on which both were obligated, in which it was adjudged that the liability of the president was that of surety only, and that the contract evidenced by the note was usurious in its character at its inception, and that no interest could be recovered thereon, and that all payments should be credited on the principal sum borrowed. *Held*, Under the evidence, that as the issues were made up and the case tried, the other stockholders were not concluded by such judgment, and could in the action at bar inquire into and determine the true amount of the indebtedness owing by such officer to the banking corporation.

5. **Contract:** USURY. The president and director of a bank cannot enter into a contract with the corporation in which he is such an officer to pay a usurious rate of interest on money owing by him to such corporation, and thereby escape the payment of all interest on such indebtedness under the statute denouncing usurious contracts.

5a. **Equity.** In such a case, a court of equity will not enforce the unlawful usurious contract, but will require the debtor to do equity by paying the legal rate of interest on the principal sum for which he is indebted to the corporation.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed.*

*Roscoe Pound* and *Frank H. Woods,* for appellants.

*Tibbets & Anderson* and *W. G. Hastings, contra.*

HOLCOMB, C. J.

This is a suit in equity, the real controversy being between stockholders of a banking corporation in process of voluntary liquidation. The disputed questions are with reference to the distribution among the stockholders of moneys derived from the assets of the corporation while its affairs were being closed up. The plaintiff sues for the purpose of having applied on his stock a certain per cent. of the moneys belonging to the corporation, which is alleged to be due him under the terms of an agreement entered into between the stockholders for the purpose of disbursing among those entitled thereto the funds which had accumulated prior thereto. The following is a copy of the agreement on which the suit is grounded and which is set out in the petition of the plaintiff: "It is agreed between the stockholders of the Blue Valley Bank that a dividend of 70 per cent. shall be paid to the stockholders at once on presentation of stock certificates to Elias Ballard for indorsement, and out of said dividends shall be charged any note held by the bank against such stockholders * * * and no money shall be paid any shareholder till his indebtedness to the bank is paid." The plaintiff alleges that by the terms of said agreement he as a stockholder of the bank is entitled to the sum of $6,930. He alleges that he has paid all of his indebtedness due to the bank and thereby has become entitled, under the terms of the agreement, to his proportionate share of the funds held for distribution among the stockholders. It is alleged in the petition:

"That under such agreement all of the stockholders of said bank excepting this plaintiff have been paid the full 70 per cent. dividend upon the face value of the stock held by each stockholder; that the amount due under said agreement to this plaintiff was held by the said trustees and by the said Elias Ballard, as treasurer, awaiting the determination of a liability of this plaintiff upon a certain note due to the said Blue Valley Bank upon which this plaintiff was surety.

"6. Plaintiff further alleges that the liability of this plaintiff upon said note has been fully determined by a judgment in the district court for Thayer county, state of Nebraska, and that he has fully paid, satisfied and discharged the said note and the obligation evidenced thereby, and is entitled to receive from the trustee of said bank and from Elias Ballard, as treasurer, upon said 70 per cent. distribution, the sum of $6,930."

The appellants, who also are stockholders, take issue with the plaintiff regarding the question of his indebtedness to the bank and its satisfaction, and by their answer allege that the plaintiff is indebted to the bank in the sum of $4,841.15, with interest thereon at 6 per cent. per annum from January 7, 1896, as evidenced by a promissory note in favor of the bank for the principal sum stated, dated April 19, 1899, and executed by the plaintiff and one George H. Hayes. It is further alleged in the answer that the judgment mentioned in the petition, the satisfaction of which the plaintiff pleads as a satisfaction of the indebtedness owing by him to the bank, was procured to be obtained fraudulently and collusively, and that such judgment is not binding and conclusive upon the stockholders as an adjudication of the amount due from the plaintiff to the banking corporation. These answering stockholders ask for an accounting and an ascertainment of the amount due to the bank from the plaintiff, and pray for a distribution of the proceeds, after the amount found to be due from the plaintiff is determined and deducted from his pro rata share of the fund for distribution, which would otherwise be coming to him as one of the stockholders.

The substance of the controversy, therefore, it will be seen, is in respect of the liability of the plaintiff to the corporation on the indebtedness mentioned and the conclusiveness of the judgment rendered in Thayer county district court, in an action on the note in which the bank was the plaintiff and one Hayes and the plaintiff herein were the defendants. The plaintiff relies on the adjudi-

cation in that action as a final determination of his indebtedness to the bank, and this is controverted by the defendants who contend that, notwithstanding the judgment, they are entitled in this action to recover for the full amount due according to the face of the note evidencing the indebtedness. In the action begun in Thayer county, it was adjudged by the district court that there was due the bank only the sum of $1,464.28. This judgment resulted from findings in favor of the defendant George Hayes, one of the makers of the note, who interposed as a defense the plea of usury, and, upon this issue, the trial court found in his favor and held the plaintiff in this action, the other defendant in that, liable only as a surety. An intelligent disposition of the questions now presented require of us a consideration of the force and effect of the judgment rendered by the district court for Thayer county upon the parties to the present action, and whether or not they are concluded by it. If the defendants are not bound by the judgment, then the nature of the liability incurred by the plaintiff when he became obligated on the note evidencing the indebtedness, and whether or not the contract is usurious in its character, and, if so, what is its legal effect upon the plaintiff in this action as to his liability thereon, are all matters for consideration and determination.

1. It is earnestly contended by the plaintiff, the appellee herein, that the Thayer county judgment is conclusive on the parties to this action as to the amount of his indebtedness to the bank. This seems to have been the view entertained by the trial court in the case at bar as to the principle of law applicable to the facts, the trial resulting in a decree in the plaintiff's favor. It is argued that this judgment can be attacked only in a direct proceeding, and must, for the purposes of this case, be accepted as a final adjudication, binding alike on the banking corporation, its stockholders and all in privity with them. The stockholders, it is contended, are parts of the corporation, represented by it in the litigation terminating

in the judgment rendered in the district court for Thayer county, which is as binding on the individual members as it is upon the corporation itself. It may be admitted that the rule contended for is of general application respecting parties and privies to a judgment, the important question being whether or not there are exceptions to the rule which will permit stockholders to impeach a judgment obtained in a proceeding by or against a corporation, upon the ground that the same was obtained fraudulently or collusively. In 3 Thompson, Corporations, sec. 3400, it is observed by the author:

"Under the modern American codes of procedure, where *equitable defenses* are allowed in actions at law, no reason is perceived why a defendant, sued upon a judgment, who was not in strictness a party to the record in which the judgment was rendered, should not be allowed to set up, as a reason why it should not be enforced against him, that it was procured to be rendered by collusion and fraud."

In an action purely equitable in character, such as the case at bar, the reasons for permitting the defendants to attack the judgment relied on as an adjudication of the amount due the corporation from the plaintiff are as persuasive, or more so, than those underlying the rule mentioned in the text. It is obvious from an inspection of the plaintiff's petition that his right to the relief prayed for is dependent upon the satisfaction and discharge of his indebtedness to the bank. For the purpose of showing himself entitled to the dividend sued for, and as a basis for a decretal order in his favor, he pleads affirmatively that the amount by him owing to the corporation has been regularly determined and adjudicated by a court of competent jurisdiction, and that the sum found and adjudged to be due has been paid and the debt thereby discharged. Coming into a court of equity and relying upon the adjudication as a determination of the amount justly owing by him, it surely ought not to be said that, if the judgment was procured fraudulently or collusively, the defendants cannot be heard to raise the question and be relieved from

an unconscionable advantage gained through no fault of their own.

In Clarke and Marshall, Private Corporations, sec. 800, the author speaking to the same point says:

"It is a well settled rule that a judgment rendered by a court of competent jurisdiction is conclusive, in the absence of fraud or collusion, against the parties to the suit, and against all persons represented by the parties; and it is also well settled that a corporation represents its stockholders in all matters within the scope of its corporate powers transacted in good faith by its officers. In an action against a corporation by a creditor, the stockholders are represented by the corporation, within this principle; and it follows that the judgment rendered against the .corporation therein, if the court has jurisidction, is conclusive upon the stockholders, in the absence of fraud or collusion, in any collateral suits or proceedings against them, in equity or at law, to compel payment of the balance due on their stock.  *   *   *   The judgment may be attacked by stockholders for want of jurisdiction, or for fraud or collusion between the officers of the corporation and the creditor."

The adjudicated cases, and especially those of more recent date, seem to fully sanction the rule as thus stated by the text writer. The right to impeach a judgment as having been obtained by fraud or collusion is by some of the authorities held to be a right to be availed of to the same extent as lack of jurisdiction as affecting the validity of a judgment and its conclusive character as against the stockholders of the corporation. A recent authority may be cited which is regarded as directly in point, and which in principle is controlling in the case at bar as to the proposition being considered, unless the rule it enunciates is repudiated as unsound. In *Wilson v. Kiesel*, 9 Utah, 397, 35 Pac. 488, the president of the corporation acquired an interest in a claim against it, and by his consent a judgment at law was obtained against the corporation for an amount largely in excess of the plaintiff's just

demand. In a suit against the stockholders to enforce their liability for unpaid subscriptions, the court held the judgment not conclusive as to them, and the validity of the claim which was the basis for the judgment was permitted to be inquired into in the collateral suit. Say the court:

"It appears that Henderson was interested in obtaining this judgment against the power company and yet as president of the company he consented to its entry or rather directed the company's attorneys to consent, which they did. Is such a judgment, so entered, conclusive on the stockholders? We think not. In the language of Judge Baxter in *Bissit v. Kentucky River Navigation Co.*, 15 Fed. 353, 'we are satisfied that the complainant's judgment, to put it mildly, was unfairly obtained, and for an amount greatly in excess of the sum due.' Now, in this suit is the first opportunity the stockholders have had to inquire into the validity of plaintiff's claim against the corporation, and, all other matters aside, the judgment in plaintiff's favor would have to be reversed in order to afford the stockholders an opportunity to contest this claim before a master or the court below. This was the course taken in the *Bissit* case above referred to, and seems to be abundantly supported by authority. In the absence of fraud or mistake in obtaining judgment against the corporation, of course, the judgment is conclusive on the stockholders. *Henry v. Vermillion & A. R. Co.*, 17 Ohio, 187; *Donworth & Behan v. Coolbaugh*, 5 Ia. 300; *Came v. Brigham*, 39 Me. 35. But if the judgment against the corporation was obtained by fraud or through collusion with the company's agents, the stockholders may obtain relief through equitable proceedings 2 Morawetz, Private Corporations, sec. 619. And the judgment may be impeached for fraud or collusion by cross-bill in the action upon it. *Conway v. Duncan*, 28 Ohio St. 102; *Bank of Wooster v. Stevens*, 1 Ohio St. 233."

Another case fully supporting the doctrine announced in the text is *McBryan v. Universal Elevator Co.*, 130

Mich. 111, 89 N. W. 683. In that case the corporation became obligated for the payment of a bill for certain machinery purchased, which the vendor retook under certain provisions of the contract of sale, and thereafter, by an arrangement with the president, collusive in its nature, procured a judgment against the corporation for the purchase price of the machinery. In a suit against the stockholders for the purpose of procuring satisfaction of the judgment, the question of its conclusiveness as against them arose, and the court disposed of this question in the following language:

"Is the judgment conclusive against a stockholder? While it is the general rule that judgments against corporations are conclusive upon the stockholders, an exception is equally well established in cases where judgments are rendered through fraud or collusion, or without jurisdiction. 3 Thompson, Corporations, secs. 3392, 3400; 2 Morawetz, Private Corporations, sec. 865; 1 Cook, Corporations, sec. 209; *Bohn v. Brown,* 33 Mich. 257, 263. In *Bohn v. Brown,* this court said: 'If the proceedings against the corporation should appear to be tainted by fraud or collusion between the claimant and the corporation, the judgment would not be good as inducement, or as an adjudication to fix the liability of the stockholder through it, or to fix the amount, and the suit against the stockholder would fail inevitably.' This exception is approved in the following cases: *Irons v. Manufacturers Nat. Bank,* 36 Fed. 843; *Schrader v. Manufacturers Nat. Bank,* 133 U. S. 67, 10 Sup. Ct. Rep. 238, 33 L. ed. 564; *Slee v. Bloom,* 20 Johns. (N. Y.) 668; *Warrington v. Ball,* 33 C. C. A. 609, 90 Fed. 464; *Saylor v. Commonwealth Banking Co.,* 38 Ore. 204, 62 Pac. 652; *Ward v. Joslin,* 44 C. C. A. 456, 105 Fed. 224. In *Schrader v. Manufacturers Nat. Bank,* judgment was rendered against the bank on a contract of guaranty. In a suit against the stockholders to enforce their liability as such, it was held that they could go behind the record of the judgment and show that the guaranty of the bank had been released by

the release of the prinicpal debtor before judgment was taken against the bank. In *Slee v. Bloom* it was said that a judgment 'is not of itself, as *res judicata,* binding on the stockholders, if it was procured by fraud, or is founded in error.' In *Warrington v. Ball,* the defense set up was that the judgment was obtained by collusion between the plaintiff and the representatives of the bank, and that the certificate of deposit, on which the judgment was based, was issued for money furnished to the cashier personally. The judgment was held not to be conclusive upon the stockholders. The opinion says: 'To bind one by a judgment to which he is not a party,. as provided for by the statute, is barely tolerable. To bind him by such a judgment obtained by fraudulent collusion (as here averred) would be intolerable.' "

In *Warrington v. Ball,* 90 Fed. 464, in discussing a like question, the court very pertinently observes: "The defendant cannot, indeed, impeach the judgment in any other way than collaterally. She is not a party to it, and it is valid as between the plaintiff and the bank so long as the latter acquiesces. She could not therefore be heard in an application to open it. A proceeding in equity to declare it void as to her, would be as clearly a collateral impeachment as that here proposed."

The following cases also support the rule announced in the authorities cited: *Bissit v. Kentucky River Navigation Co.,* 15 Fed. 353; *Town of Hinckley v. Kettle River R. Co.,* 80 Minn. 32, 82 N. W. 1088; *Skillern v. May,* 4 Cranch (U. S.), 136.

We are of the opinion that upon principle and under the authorities cited the defendants in this action may, upon the grounds and for the reasons stated, attack the judgment relied upon by the plaintiff as an adjudication of the amount of the indebtedness owing by him to the bank, and that the rule invoked by him as to its conclusive character is not applicable in its full sweep to the stockholders of a corporation who are not in the fullest and strictest sense of the word parties to the action in which

the judgment is rendered. They are represented in the action by the corporation and its officers who are charged with the conduct of its affairs, and are undoubtedly bound in all respects as a party to the action, unless the proceedings may be avoided on the ground of fraud or collusion or for lack of jurisdiction.

2. If the Thayer county judgment be held not final and conclusive in all respects as against the stockholders, as we are inclined to hold that it is not, then it becomes material to inquire as to the nature of the plaintiff's liability to the bank and whether or not that liability has been satisfied. If his obligation were secondary, if he were a surety only for the other signer, Hayes, who was the principal debtor, and the contract was tainted with the vice of usury at its inception, as it unmistakably was, then the measure of the plaintiff's legal liability has been discharged and satisfied by the payment of the judgment rendered in the district court, regardless of the question of whether it is binding and conclusive on the stockholders. If, however, plaintiff's liability were other and different from that of surety, if he became a principal, then his obligation to the bank has not been met by the payment of the judgment rendered against him in which his relation to the indebtedness was held to be that of surety only. It is disclosed by the record that the plaintiff was one of the principal stockholders, the president and one of the directors of the bank, devoting, however, but a small portion of his time to its affairs, being himself engaged in the grain business. The actual management of the affairs of the bank and of its business was entrusted largely to the cashier and others subordinate to him. One George Hayes, it appears, was a debtor to the bank in the sum of $2,000 for money borrowed to put into the firm business of Hayes Bros., a partnership dealing in grain, of which he and his brother were the individual partners. Both partners were obligated on the note given for the borrowed money. By the giving of renewal notes the indebtedness was permitted to run for a considerable period

of time, and existed as originally incurred when the plaintiff became obligated for its payment. It also appears that the firm of Hayes Bros. was indebted to the plaintiff individually, and that he was obligated on other indebtedness owing by them. George Hayes was during all the time mentioned, it seems, and had been for a long time, in the employment of the plaintiff. The firm of Hayes Bros. becoming financially embarrassed, the plaintiff, for the purpose of protecting himself, took steps to obtain such property or security as he could from the insolvent firm. Before taking action he consulted with one McGintie, who was at the time the vice-president and attorney for the bank, with a view of enlisting the latter's services in protecting the plaintiff in his dealings with the Hayes Bros. When thus approached, McGintie called the plaintiff's attention to the fact that the bank held the note of Hayes Bros. for $2,000, and that he (McGintie) would have to take care of that note for the bank, and to look out for it also. To this the plaintiff assented and replied, in substance, that that would be all right. In adjusting matters with Hayes Bros., in which McGintie assisted, presumably acting on the prior conversation with the plaintiff as to the bank's claim being looked after, and advising as to the best course to pursue, the plaintiff secured an assignment and transfer of the property of both debtors, and as contended by the appellant, among other things, assumed responsibility for the payment of the note held by the bank, for which the Hayes Bros. were liable. It is quite apparent to our minds that this indebtedness entered into the negotiations then consummated and was a part of the consideration for the transfer of the property which the plaintiff secured. McGintie testifies that there was an arrangement made whereby the plaintiff was to sign the note of Hayes Bros. to the bank and that he did thereafter sign it. It is fairly inferable from the evidence in the record that in the transaction had between the plaintiff and Hayes Bros. he obtained all their property, and that this was accomplished

by reason of their liability to him and to the bank, and for the purpose of satisfying such liability in so far as they were able to do so. The bank, it is true, held as collateral security a contract for the sale of some land situated in Kansas, but this was deemed insufficient, and the necessity of further security or satisfaction of the indebtedness was obvious. It is in evidence that after returning from Hebron, where the Hayes Bros.' transaction took place, to Wilbur, where the bank is located, McGintie suggested to the plaintiff, in view of the fact that he (the plaintiff) had obtained in his own name all of the property of the Hayes Bros. and which had been turned over to him, that he ought to give his note to the bank in lieu of the one held against the insolvent firm, and stated that the bank ought to have its indebtedness made safe in that manner. To this the plaintiff demurred, but he agreed to and said he would sign and indorse a note with George Hayes for the amount of the indebtedness then owing to the bank by the Hayes Bros. The suggestion was acted on and a new note executed by George Hayes, who was in the employment of the plaintiff, which was taken by the bank in place of the note which it then held. The note as thus executed was renewed from time to time, interest and other items of indebtedness being added and included therein until it had increased to the amount hereinbefore stated. While these renewal notes were generally signed by Hayes, it is not clear that all of them were. It appears that some of them were not. It is obvious that Hayes' obligation was regarded as nominal only, and that the plaintiff's signature on the note was the one relied upon by the bank during the time the indebtedness was extended and until the present controversy arose. The bank treated the plaintiff as the principal debtor. He was in a large measure dealing with himself on the one hand as an officer of the bank and on the other as its debtor. His directions as to how the indebtedness should be carried were followed by those holding subordinate positions. The debt was regarded as his obligation and his sugges-

tions in regard thereto were acted upon without question. There were paid on the collateral land contract, and included in the note from time to time, items of interest, taxes on the land, and payments as they fell due on the purchase price named in the contract. There also appears to be included in the note a disputed item, which it is contended by defendants was the individual indebtedness of the plaintiff. The plaintiff made some payments of interest on the note, which he states were for the benefit of Hayes, who he contends is the principal maker. Hayes, from the time the plaintiff signed the note forward, took no further interest except to sign the notes when presented to him, and made no attempt to discharge the indebtedness, nor was any effort made to collect it from him. He was insolvent, and was so regarded by all the parties to the transaction. The other officers of the bank, it is evident, relied on the plaintiff's responsibility as the maker of the paper, and accepted the renewals, and entered into other transactions in relation to the continuation of the indebtedness with the plaintiff as the one primarily liable, and the one to whom it must and did look for its satisfaction. There was included in one renewal note an item of $336, which is obviously the individual indebtedness of the plaintiff, or its inclusion in the note was wholly without consideration and an inexcusable error, which it is hardly believed would be committed by men of business ability and intelligence, such as we assume were the parties to these several transactions. We think from the evidence before us that the item must be regarded as a debt owing by the plaintiff to the bank, and included in the note in order to consolidate the whole indebtedness then owing by him. It is altogether clear that no transaction between the bank and Hayes was had during the time the plaintiff was obligated on the note, which added to or decreased the indebtedness in the slightest degree, except the increase caused by the accrual of interest. We are altogether satisfied that as between him and the bank the plaintiff was not obligated on the indebtedness simply

as a surety. His fiduciary relations to the bank and its stockholders, his adjustment of the bank's and his own claims against Hayes Bros., his assumption of liability to the bank on the Hayes Bros.' indebtedness in the manner narrated, must, we are convinced, be regarded as the assumption of a primary liability, and that it was he to whom the credit was extended and for whom the indebtedness was carried during the entire time of its existence after he became liable thereon. In truth, the plaintiff, as we view the record, undertook, when he secured the property of the Hayes Bros. as part consideration therefor, to protect the bank and pay its indebtedness for which both members were at the time liable. He was advised this must be done by the bank's attorney at the time his services were enlisted.

That the bank acted and relied upon his agreement in this respect, and for that reason took no action on its own initiation to collect its indebtedness against those who were then liable thereon, is no doubt true. The conclusion is reached that the plaintiff's rights are to be measured and determined from the standpoint of primary liability to the bank for the payment of the original indebtedness of $2,000 on which the Hayes Bros. were obligated.

3. The plaintiff's status being that of a principal debtor to the bank for the amount owing on the Hays Bros.' note, and he being also the president, a director and one of its principal stockholders, and a trustee selected to wind up its affairs, the question naturally arises as to the legal effect of the action taken in regard to such indebtedness, and of the litigation resulting in the judgment relied on as an adjudication of the amount due. During the time of these transactions, the plaintiff sustained a fiduciary relation to the stockholders of the bank, which required of him the utmost good faith in all his actions affecting their interests, and especially so where his individual interests came in conflict with those of the corporation. His authority as president and director regarding the business transactions of the bank was supreme, except as limited

39

and restricted by the board of directors. In winding up the affairs of the corporation and the distribution of the funds derived from the assets among the stockholders entitled thereto, he was one of three trustees especially selected for that particular purpose. The note was an asset of the bank, and the collection of the amount due thereon according to its face added materially to the fund for distribution among the stockholders. It is fairly inferable from the record that his voice and influence as to the conduct of the business in closing up the affairs of the bank were of great weight, and not infrequently his attitude was a controlling factor as to the proper course to pursue. One of the trustees during the latter stages of the liquidation acted, if at all, almost wholly in a perfunctory manner, leaving the business to the other two, one of whom was the plaintiff. It was from considerations of this character, and because the plaintiff was a debtor to the bank in a large sum on the note mentioned, which was regarded as a valuable asset which should be converted into money, that an effort was made by other stockholders to remove the then acting trustees and have others appointed in their places. Obviously, it was the duty of the plaintiff to execute the trust with an eye single to the interests committed to his care, and when a conflict arose between these interests and those belonging to him individually, it was his especial duty to guard the rights of the stockholders thus confided to his care as a trustee, director and officer of the bank, or to vacate his position, sever his relations as trustee and permit another not so situated to assume the duty and responsibility of conducting the business of the bank so that the interests of the stockholders would not be jeopardized by lack of effort to preserve and collect its assets for the benefit of those entitled thereto. *McDowell v. First Nat. Bank of Sutton, ante,* p. 307. In a determination of the question as to whether the proceedings had in the district court resulting in the judgment which the stockholders are seeking to be relieved of is binding and conclusive as against them, it is not necessary that there

should have been actual fraud in the transactions leading up to a rendition of such judgment. The doctrine forbidding proceedings of this character rests upon the broader principles of public policy, which preclude persons occupying fiduciary relations from representing conflicting interests which may tempt them to disregard duties,and by their action contribute to an injury on the one side or the other of the interests thus found to be in conflict. The rule finds abundant support in authority, and rests upon reasons contributing substantially to the promotion of justice, and is most sound and salutary in principle. *Gooch v. Peebles,* 105 N. Car. 411; *Baker v. Humphrey,* 101 U. S. 494, 502; *Arrington v. Arrington,* 116 N. Car. 170; *Spinks v. Davis,* 32 Miss. 152.

4. At the time the process of voluntary liquidation was entered upon, the item of indebtedness in favor of the bank, for which the plaintiff was obligated, and out of which this controversy has arisen, had grown from the original sum of $2,000 borrowed money until it amounted, according to the face of the note, to the sum of $4,841.15, with interest from January 7, 1896. For the purpose of closing up the affairs of the corporation, the plaintiff, the cashier of the bank, and one other stockholder, all of whom were directors, were by mutual consent selected as trustees for the stockholders to convert the assets into cash and distribute the same among those entitled thereto. Afterwards dissatisfaction arose among certain of the stockholders by reason of the inaction of the trustees, more especially with reference to this one item of indebtedness, which resulted in the institution of a suit against the trustees, having for its object their removal and others selected who would press the collection of the indebtedness against the plaintiff, and, as alleged, the better thereby conserve the interests of all stockholders. This litigation resulted adversely to the plaintiffs in the suit. *Sands v. Gund,* 3 Neb. (Unof.) 316. After this dissension arose, and after attempt had been made to have the trustees enforce the collection of the note, on which the plaintiff was liable, in

favor of the bank, and soon after the commencement of the litigation brought for the purpose of removing the trustees, they, or some of them, acting·for the bank and its stockholders, caused to be begun proceedings in the district court for Thayer county, where Hayes resided, with the avowed object of enforcing collection of the note. Both Hayes and the plaintiff herein were made defendants. Hayes was notoriously insolvent. After issues were made up, a trial was had which resulted in a judgment holding that Hayes was liable on the note as the principal maker, and the plaintiff's liability was that of surety only. It was also held that the contract as originally made between Hayes or Hayes Bros. and the bank was usurious. After the allowance of credits by payments as interest and otherwise, the amount then found legally due amounted to the sum of $1,464.29 only, which the bank was permitted to recover at its own costs. The collection of this indebtedness, it is clear, had for·some time been a lively subject of controversy, and it was known by the trustees that usury would be pleaded as a defense should an action be instituted against Hayes thereon. In fact, it is in evidence it was upon plaintiff's urgent solicitation that the plea of usury was interposed, the plaintiff telling Hayes that he could not afford to have a large judgment hanging over him, as he was yet a young man, and that, if the plaintiff was required to pay the full amount of the debt as evidenced by the note, he would keep the obligation against Hayes for contribution alive as long as he lived. We can hardly escape the conclusion that the plaintiff was by this method of procedure attempting to escape liability for this large item of indebtedness, which he could not hope to successfully defend against himself. We are hardly warranted in drawing the inference that his co-trustees made any special effort to fasten liability on him as one primarily obligated for the debt, and one who could not, because of his relations to the bank and its stockholders and the manner of assuming the indebtedness, successfully avail himself of the plea of usury. It was the

plaintiff that retained. counsel for the defense and compensated them for their services. It is doubtless true that the situation was a delicate one for his co-trustees, and their duties in the premises, it is quite probable, were not altogether free from difficulty. It is argued that the institution of this action was the only practical and available method of procedure by which could be determined the legal liability of the parties to the paper sued on, and that no unfavorable inferences should be drawn because of the action taken. It can hardly be doubted that an action, such as the one we are now considering, and to which the plaintiff was ultimately compelled to resort, would have been a very proper one to have instituted in the first instance, and was one that would have afforded a most appropriate way of fairly and fully determining his liability on the indebtedness, as well as the rights of those with whom he was associated as stockholders having interests adverse to his own. In the enforcement of such liability his own interests were in irreconcilable conflict with those of the bank and its other stockholders. The situation was such that, if recourse must be had to the courts, the corporation and the other stockholders should be left free to pursue him as an adversary or defend against his contentions. The plaintiff, we are constrained to say, was in a measure representing both sides of the controversy. His influence as one of the trustees was not exerted in a marked degree against his individual interests. He was at the time one of the two active trustees who were charged with the duty of collecting the bank's dues and conserving its assets for the benefit of its stockholders. In framing the issues in the suit at law begun in Thayer county, they were so made up as to present no substantial question as to the primary liability of the plaintiff for such indebtedness. The petition declared on the note in the usual form. The plaintiff, by his answer, admitted that he signed the note, but only as surety for his codefendant Hayes, and for no other consideration, and prayed that his obligation as surety be fixed in the judgment. To this

answer no reply was filed. The other defendant, by his answer, admitted the execution of the note, pleaded usury in the transaction, and alleged certain payments which he prayed to have deducted from the principal sum borrowed. The reply to this answer was, in substance, a general denial. The triable issue in the case, as made, and the only substantial controversy, was in respect of the question of usury and the amount of the payments which had been made as interest upon the principal sum borrowed. There appears to be no substantial ground for any real controversy regarding this issue. That the note first given for borrowed money was tainted with usury is established beyond peradventure of doubt. It is hardly believable that those representing the bank, and who were interesting themselves in the enforcement of the obligation, had they been acquainted with the facts, could have entertained any serious doubts as to this defense being absolutely good. It was wholly a waste of time and money to attempt to controvert this defense with any sanguine expectation of obtaining a judgment on the theory that the original contract was free from the taint of usury. By the evidence of the bank itself and out of its own mouth it was condemned in respect of this defense. Such being the situation, we are of the opinion that there was under the pleadings no serious disputed question of fact nor of law to be adjudicated by the district court for Thayer county, and we can hardly escape the conviction that the apparent contest over the question of usury, which indubitably existed, had the effect only of obscuring more substantial matters of controversy which might have been presented in the trial of the case. It is said that the objecting stockholders were notified of the proceedings had in the trial of the case in Thayer county and of the different steps taken therein. They were in no way recognized, nor had they any voice as to how the issues should be made up, or what questions should be presented for trial in the case then pending, nor as to the manner of conducting the case. These matters were all controlled by the trustees acting

for the stockholders, who at the time were resisting the efforts of the objecting stockholders to have the bank's affairs placed in any other hands. It is true, they were notified of the time and place of taking depositions which were taken in the case to establish the issues relating to the question of usury and the fact of the payments made on the indebtedness, and that they declined to take any part in the examination of such witnesses. Otherwise, the case was conducted exclusively by those representing the trustees and the attorneys employed by them for that purpose. On the whole, we are disposed to the view that the question of the primary liability of the plaintiff on the note sued on and his right to avail himself, as against the bank and other stockholders, of the plea of usury were neither fully presented nor fairly tried in that suit, and that the judgment therein rendered is not conclusive and binding on the other stockholders, so as to preclude them from raising these questions and having a determination thereon in the suit at bar.

5. The plaintiff, when he undertook the payment of the obligation of Hayes Bros. in favor of the bank, at the time of the adjustment of the matters pending between him and the bank on the one part and the firm of Hayes Bros. on the other, and signed the note which the bank held against those parties, became, as we have seen, as between him and the bank, primarily liable thereon. The question presents itself as to the availability to him of the defense of usury in the determination of the amount legally due thereon. He having by this transaction become obligated to pay the debt, there can be no serious controversy, we apprehend, as to his undertaking to satisfy the note being a new and different contract than the one then existing between the bank and Hayes Bros., and that the usurious character of the contract existing prior to such time in relation to such indebtedness was eliminated from the new contract, and, the old contract being terminated, the new was purged of the taint of usury theretofore existing. *Building & Loan Association of Dakota v. Walker,* 59 Neb. 456; Webb,

Usury, sec. 452; *Culver v. Wilbern,* 48 Ia. 26. We find no evidence of usury entering into the original contract whereby the plaintiff became obligated to pay the debt contracted by Hayes Bros. It is clear from the evidence that not only did usury enter into the first contract between the bank and Hayes Bros., but it is equally clear that, subsequent to the time the plaintiff became obligated to pay the debt, usurious interest was contracted for, reserved and paid at different times upon the renewals of the note first evidencing the indebtedness, during the time the indebtedness was carried, and continued by such renewals from time to time until the execution of the note now in controversy. It is satisfactorily proved that interest was charged at the rate of 12 per cent. per annum on the indebtedness according to the terms of the renewal of the note of February 19, 1895, and on other renewal notes thereafter executed. It is also clearly established, we think, that the item of $328.24, carried into the note as an indebtedness occurring by reason of payments on the principal, interest and taxes due on the contract for the sale of land held as collateral security, was reckoned upon interest charges thereon from time of payment until incorporated into the note at a greater rate of interest than that allowed by law. In other words, usury was charged and contracted for by the bank upon the payment made by it in preserving its collateral security, and making the payments required by the terms of the land contract in order to obtain title to the land described therein. It becomes necessary, therefore, to determine the liability of the plaintiff for the indebtedness sued for, in view of the fact that the contract entered into between him and the bank is tainted with usury by reason of the transaction heretofore narrated. We are of the opinion that the law will not permit him, acting in the dual capacity in which he was, and in a sense the agent of his principal, the bank, to enter into a usurious contract with himself and his principal, and thereby escape all liability for the payment of interest on the principal sum of the indebtedness for

which he thus became obligated. It must be accepted, we think, as fundamentally correct that he could not be permitted to profit by his own wrongful action, nor by the action of the bank on the one part and himself on the other, to the prejudice of the stockholders, he holding, as he did, the fiduciary relations then existing between him and the corporation and those it represented. *Sternberg v. Callanan*, 14 Ia. 251; *Oliver v. Lansing*, 48 Neb. 338. On the other hand, a court of equity will not enforce a usurious contract prohibited by law. A court of equity, it seems to us, should require him to do equity, and this demands of the plaintiff that in order to discharge his liability to the bank, he must pay the principal indebtedness, together with the legal rate of interest accruing thereon during the time of the running of the debt. *Eiseman v. Gallagher*, 24 Neb. 79; *Frenzer v. Richards*, 60 Neb. 131.

We do not undertake in this action and at this time to determine the amount justly due from the plaintiff to the corporation, and expressly refrain from adjudicating the amounts or validity of any of the items which seem to have entered into the consideration for the last note executed by the plaintiff to the bank, which forms the basis for the recovery sought to be enforced in this action. We are of the opinion that the amount justly due can better be ascertained upon an accounting after the legal status and rights of the parties with reference to the character of the indebtedness are here determined.

The decree of the district court is vacated and set aside and the cause is remanded, with directions to ascertain the amount justly due from the plaintiff, according to the views herein expressed, and to make such further and other orders in the premises as seem to be just and equitable, not inconsistent with this opinion, to the end that all of the rights of all parties to the litigation may be fully and finally adjudicated and determined.

REVERSED.