.   MACOMBER *v.* ENDION GRAPE JUICE CO.

1. PARTNERSHIP ASSOCIATIONS — CORPORATIONS — STOCKHOLDERS'
   SUITS—RESCISSION—FRAUD IN ISSUANCE OF STOCK—ACTIONS.
   An action at law lies against a limited partnership association
   in favor of a plaintiff who bought treasury stock of the com-
   pany under fraudulent representations, and who rescinded the
   transaction, tendering back the stock issued.

2. SAME — JUDGMENTS AGAINST — CONCLUSIVENESS AS TO STOCK-
   HOLDERS.
   A judgment in such action is binding on the stockholders in
   proceedings to enforce their liability for assessable stock
   unless it is obtained by fraud or collusion, or is void or ex-
   cessive.

3. SAME—STOCK—PROPERTY RECEIVED IN PAYMENT—DESCRIPTION .
   —STATUTES.
   It is insufficient to describe property transferred in payment
   for capital stock to a copartnership association, limited, by a
   general statement in the articles of association that it is all
   the property of certain named kinds, belonging to a corpora-
   tion, in complying with 2 Comp. Laws, § 6079.

4. SAME—STOCKHOLDERS' LIABILITY.
   A stockholder who subscribed for 2,998 shares of stock in the
   association and paid for them in such property and turned
   back into the treasury all but 300 shares without considera-
   tion, under an oral arrangement not filed with the register of
   deeds in accordance with the statute, cannot be treated as
   the holder of paid-up stock.

5. SAME — PURCHASERS IN GOOD FAITH — STOCK AND STOCKHOLD-
   ERS.
   The purchaser of stock from one of the original incorporators,
   buying in good faith in reliance on the records filed, is not
   liable for the difference between the amount of his purchase
   price and the par of the stock.

6. SAME—ORGANIZATION—RECORDS—STATUTES.
   The record filed with the register of deeds under 2 Comp.
   Laws, § 6079, cannot be varied by parol contemporaneous
   agreements of the associates .

Error to Berrien; Coolidge, J. Submitted November 8, 1909. (Docket No. 176.) Decided March 5, 1910.

Statutory proceedings by Theodora Macomber against the Endion Grape Juice Company, Limited, George M. Thresher, Thomas L. Wilkinson, and B. H. Spencer to enforce the individual liability of defendants in defendant corporation. A judgment for defendants is reviewed by petitioner on writ of error. Affirmed as to defendant Spencer, and reversed as to defendants Thresher and Wilkinson.

*Cady & Andrews*, for appellant.

*Lawrence C. Fyfe*, for appellees Thresher and Wilkinson.

*Gore & Harvey*, for appellee Spencer.

Blair, J. On April 27, 1903, the Endion Grape Juice Company, a corporation capitalized at $15,000, in which the respondents Thresher and Wilkinson and Joseph H. Johnston and others were stockholders, transferred all of its property, consisting of formulas, machinery, grape juice, etc., for an expressed consideration of $100, to Johnston and Thresher, for the purpose of reorganizing and continuing the business theretofore carried on by the corporation under the form of a partnership association organized at the same time under the provisions of chapter 160 of the Compiled Laws; the name thereof being Endion Grape Juice Company, Limited. The total amount of the capital as fixed by the statutory statement was $60,000, divided into 6,000 shares. The amount of capital subscribed for by the shareholders, according to said statement, was as follows: Joseph W. Johnston, Benton Harbor, Mich., $29,980, being 2,998 shares; George M. Thresher, Benton Harbor, Mich., $29,980, being 2,998 shares; Thomas L. Wilkinson, St. Joseph, Mich., $10, being 1 share; John H. Lee, Benton Harbor, Mich., $10, being 1 share; Arthur B. Lee, Benton Harbor, Mich.,

$10, being 1 share; Lydia J. Lee, Benton Harbor, Mich., $10, being 1 share.

Article 7 of the statement is as follows:

"The following schedule contains the names of the parties contributing property as part of the capital of said association with a description and valuation of the property so contributed, which valuation has been and is hereby approved by all members subscribing to the capital of said association. Each of the parties hereto associating has contributed his undivided interest in and to all the manufactured grape juice and cider of said parties, and also all bottles, packages, and other material owned by them and used in connection with such business. And also in and to the processes and formulæ for the making of what is known as Lee's Endion Grape Juice and also for making Endion Cider. The valuation of the interest of each party hereto associating in and to such property and processes is hereby fixed at the amount of capital subscribed by each respectively, and it is agreed that the above amount of capital stock subscribed by each party hereto associating is hereby paid in full by the interest of such person in and to the said manufactured product of grape juice and cider and other property, and also of the said processes. And the above valuation of the property interest hereby contributed by each party hereto associating as above set forth is approved by all of the parties hereto, and it is agreed by all the parties hereto that the above capital stock subscribed by each shall be issued to the respective persons fully paid and nonassessable in payment of the interest of the person in and to such property and processes."

The formal transfer of the property to Johnston and Thresher, and the issue to them of 2,998 shares each, and then the retransfer of that property to the association, was a mere formality and was intended merely as a convenience and to get the title out of the old company and to enable the stock to be issued to individuals. At the same instant that this stock, 2,998 shares, was issued to Mr. Thresher, and 2,998 shares were issued to Mr. Johnston, it was turned back into the association. It was never intended really they should own it. It was done to make

every share fully paid up.   Then there were issued shares
of stock as follows:

John H. Lee 499 (and 1 already issued) _____ 500 shares
Arthur B. Lee 499 (and 1 already issued) _____ 500    "
Lydia J. Lee 149  (and 1 already issued) _____ 150    "
Robert P. Lee _____ 500    "
Joseph W. Johnston _____ 500    "
George M. Thresher _____ 300    "
T. L. Wilkinson 149 (and 1 already issued) _____ 150    "

—leaving 3,600 shares unissued.   Each of the stockhold-
ers surrendered his shares in the old company and so con-
tributed all his interest in all the manufactured grape juice
and cider and in all bottles, packages, machinery, and
other articles, business good will, and the formulas for
grape juice and cider of the old company.

July 21, 1903, the defendant issued to plaintiff a certifi-
cate for 50 shares "fully paid and nonassessable," for
which her father paid $375 in cash.   In November, 1904,
the association having become bankrupt, plaintiff com-
menced suit by declaration against it.   The declaration
contained the common counts and a special count in as-
sumpsit.   Under the common counts plaintiff sought to
recover as assignee for the value of certain corks, etc.,
amounting to $190, purchased by defendant.   Under the
special count she sought to recover the amount paid for
her stock, alleging that she was induced to purchase the
same by false representations, and that upon learning the
falsity thereof she had tendered back the stock and de-
manded her money, which was refused.   Plaintiff recov-
ered judgment for the amount of the two items and inter-
est, from which no appeal has been taken.   It appears
that an application for a new trial was made, which the
court announced that he would grant in case defendant
would pay the $190 which it conceded that it owed.   An
execution was issued against the goods and chattels of the
defendant and returned unsatisfied.   Plaintiff then filed
her petition in the circuit court to enforce the individual
liability of respondents as stockholders of defendant, in

pursuance of the provisions of section 8554 *et seq.*, 3 Comp. Laws. The case was tried by the court, and findings of fact and of law were filed, resulting in a judgment for respondents, which petitioner has removed to this court by writ of error.

Without attempting to review the numerous assignments of error or to pursue the order of argument adopted in the briefs of counsel, we shall discuss the propositions which, in our opinion, are decisive of the case.

*First.* The law court had jurisdiction of plaintiff's suit to recover back her money upon her rescission of the purchase and tendering back the stock. 1 Cook on Corporations (6th Ed.), § 159; *Mack* v. *Village of Frankfort*, 123 Mich. 421 (82 N. W. 209); *Hamilton* v. *Hulled Bean Co.*, 143 Mich. 277 (106 N. W. 731); *Fidelity Mut. Life-Ins. Co.* v. *Blain*, 144 Mich. 218 (107 N. W. 877). Plaintiff did not proceed against defendant as a stockholder, but as one whose money having been obtained by false representations was entitled to renounce her character as stockholder, restore the *status quo*, and recover back her money. Her judgment determined her right to rescind the purchase of the stock, rendered the transaction void *ab initio*, and relieved her from all the obligations and relations of a stockholder. Such being the status of plaintiff, decisions to the effect that stockholders must pursue their remedy in courts of equity are not applicable. Plaintiff's judgment clothed her with the character of an ordinary judgment creditor; there was neither fraud nor collusion in obtaining it; the court had jurisdiction of the case; it was neither void nor excessive; and it was, therefore, binding upon the stockholders. *McBryan* v. *Elevator Co.*, 130 Mich. 111 (89 N. W. 683, 97 Am. St. Rep. 453); *Gund* v. *Ballard*, 73 Neb. 547 (103 N. W. 309).

Section 6079, chap. 160, 2 Comp. Laws, under which the defendant association was organized, required:

" Where property has been contributed as part of the capital, a schedule containing the names of the parties so

contributing, with a description and valuation of the property so contributed, shall be inserted in such statement."

We think it was the intention of the legislature, in providing for a schedule containing a description of the property contributed, to require as specific a description of such property as its nature would admit of. While the statute permits the property to be estimated at a valuation to be approved by all the members subscribing, at least, where they act in good faith, there is no such provision relative to the description of the property contributed. We are of the opinion that the description of the property was not in compliance with the statute. *Maloney* v. *Bruce*, 94 Pa. 249.

Conceding that the valuation cf the property was in good faith and not in violation of the statute, it nevertheless appears that the respondents Thresher and Wilkinson did not pay for the shares of stock subscribed for and issued to them. According to article 1, George M. Thresher subscribed for 2,998 shares, and Thomas L. Wilkinson subscribed for 1 share, according to the schedule:

" The valuation of the interest of each party hereby associating in and to such property and processes is hereby *fixed at the amount of capital subscribed by each respectively,* and it is agreed that the above amount of capital stock *subscribed by each party hereto associating* is hereby paid in full by the interest of such person," etc.

The written statement required to be filed in the office of the register of deeds and constituting notice to all persons thereafter dealing with the corporation must speak for itself, and, manifestly, cannot be varied by a secret parol agreement between the original associates.

Mr. Thresher testified:

"*Q.* Where is the balance of the $60,000 ?
"*A.* The good will and the formula.
"*Q.* Then you estimated the formula at $45,000 ?
"*A.* About that.

"*Q.* That is the same formula you purchased from the old company for $100?

"*A.* That $100 was a mere figure. We all turned in our stock. It didn't matter whether we put $100 or $20,000; it was a figure to represent all the stock of the old company, and it was to be turned in and canceled, and we were to issue new certificates in place of it.

"*Q.* You turned back your 2,998 shares?

"*A.* Yes, sir.

"*Q.* And received in return 300?

"*A.* Yes, sir.

"*Q.* Was there any consideration passed from the company to you for the difference between the 300 and 2,998?

"*A.* No.

"*Q.* You voluntarily surrendered them?

"*A.* Yes, sir.

"*Q.* Did you have an agreement between yourselves and the other incorporators of this company as to the return of the excess of 300 shares of stock, between 300 and 2,998?

"*A.* It was understood what each was to receive. I never owned the stock an instant.

"*Q.* The 2,998 you never owned?

"*A.* It was issued to me, but the same instant it was indorsed back to the company.

"*Q.* It was never intended you should own it?

"*A.* No."

It is apparent that Mr. Thresher had not in reality subscribed $29,980 of the capital stock and was not entitled to 2,998 shares thereof, but actually was only entitled to 300 shares; while Mr. Wilkinson, who had only subscribed for 1 share, was given 149 more for which he paid nothing, in addition to his property interest described in the schedule. It is plain that the schedule does not in fact contain a statement of the property contributed by the original associates as stated in the schedule, but only as stated in the contemporaneous oral agreement. The statutory conditions not having been complied with, the contributions of property cannot be treated as payments of capital stock.

As to the respondent Spencer, the court made the following finding of fact:

"I find that the defendant Spencer did not become a subscriber to the capital stock of the new company till after the organization of the new company, and that he paid $500 for 100 shares of the treasury stock sold to him."

No. 1 of the court's findings of law is as follows:

"I find that the said Spencer purchased treasury stock of the company in the same manner in which the plaintiff purchased hers, and therefore is not liable to the plaintiff under this proceeding; he not being a subscriber to the original capital stock, but a purchaser for values."

The plaintiff purchased her stock for 75 cents on the dollar, while Mr. Spencer purchased his for 50 cents on the dollar. As appears by the statutory statement, John H. Lee was selected as manager and chairman, and the records of the association did not disclose that any new chairman had been regularly elected in his place at any meeting of the stockholders or managers. His name appears to have been signed on plaintiff's certificate of stock as chairman, but whether such signature was authorized by him does not appear. A circular was introduced in evidence, bearing his name, which Mr. Thresher testified was submitted to him, and there can be little doubt that he was acting as chairman, though perhaps not regularly elected to that position. It does not appear, however, that he had any greater knowledge of the facts concerning the value of the property than the plaintiff herself, nor that he did not have the same grounds as she had for believing that the property had been fully paid for, since none of the facts as to the oral arrangement appeared of record. As the court said in *McBryan* v. *Elevator Co.*, 130 Mich. 111 (89 N. W. 683, 97 Am. St. Rep. 453):

"The wrong was done by the original incorporators in making a false statement as to the amount of stock actually paid in. The public, and creditors dealing with the corporation, had the right to rely upon this statement as true. Subsequent purchasers of stock were also entitled to rely upon it as true. It would be unjust to visit the sins of the original incorporators upon subsequent stockholders who purchased in good faith."

The judgment is affirmed as to the respondent Spencer, and reversed as to the respondents Thresher and Wilkinson, and judgment is directed in favor of plaintiff in accordance with this opinion.

MONTGOMERY, C. J., and OSTRANDER, HOOKER, and BROOKE, JJ., concurred.