[No. 3697-2. Division Two. May 21, 1979.]

VIRGINIA B. LIEBERGESELL, *Respondent,* v. FRANKLIN
W. EVANS, ET AL, *Appellants.*

358

*Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern* and *Valen H. Honeywell,* for appellants.

*Sinnitt, Tietge & Sinnitt* and *Paul Sinnitt,* for respondent.

PEARSON, C.J.—We granted discretionary review of the denial of the motion by Franklin W. Evans and Donald E. Kotowski for a partial summary judgment against the plaintiff, Virginia Liebergesell. Defendants' motion contended that they were entitled to rely on the defense of usury in plaintiff's action to recover sums of money she had loaned to them, plus interest as stated on the notes given to her by Mr. Kotowski. Although most of the notes carried interest at rates higher than the legal rate of 12 percent, the Superior Court denied summary judgment and ruled that the facts of this case precluded the usury defense and the action should go to a jury. We reverse the denial of partial summary judgment. The crucial issue is whether the defendant borrowers are estopped by their conduct to claim usury as a defense.

We view the evidence, as the trial court was required to do, in a light most favorable to plaintiff, and we draw all reasonable inferences from the evidence in her favor in deciding whether genuine issues of material fact are absent so as to entitle the movants to judgment as a matter of law. *Morris v. NcNicol,* 83 Wn.2d 491, 519 P.2d 7 (1974); *Adamski v. Tacoma Gen. Hosp.,* 20 Wn. App. 98, 579 P.2d 970 (1978).

Between 1974 and 1976, Virginia Liebergesell loaned various sums to defendants who were engaged in the sideline

of buying, renovating, and selling old houses. Defendants agreed to use the money she loaned them to assist in the purchases and renovations and to compensate her with a 20 percent share of the profits from resale of the houses, plus interest on the notes evidencing the loans.

The notes were all prepared and signed by defendant Kotowski, and are payable to plaintiff individually, or in some cases, as custodian for her minor children. Following is a chronological list of the notes, their dates of execution, principal amount, and stated interest.

| | Date | Principal | Stated Interest |
|---|---|---|---|
| 1. | September 27, 1974 | $ 1,200 | 36 percent |
| 2. | October 4, 1974 | 1,300 | 36 percent |
| | (The first 2 notes were replaced by note 3.) | | |
| 3. | November 20, 1974 | 2,500 | 18 percent |
| | (Note 3 was replaced by note 4.) | | |
| 4. | January 20, 1975 | 9,000 | 18 percent |
| | (Note 4 was, in turn, replaced by note 5.) | | |
| 5. | July 1, 1975 | 9,000* | 12 percent (18 percent interest actually paid) |
| 6. | July 1, 1975 | 4,000 | 12 percent |
| 7. | September 8, 1975 | 3,500* | 18 percent |
| 8. | November 10, 1975 | 3,000* | 12 percent (18 percent interest actually paid) |
| 9. | November 15, 1975 | 4,000* | 18 percent |
| | (Note 6 was replaced by note 10.) | | |
| 10. | January 8, 1976 | 4,000* | 18 percent |
| 11. | June 14, 1976 | 1,100 | 24 percent |
| | (Note 11 was repaid in July 1976 and is not in issue.) | | |
| | Total Principal: | $23,500* | Total interest paid at |

(Notes 5, 7, 8, 9, 10)
usurious rates
to February
1977:
$5,207.62

Plaintiff sued to collect on the notes when defendants defaulted in 1977. According to the complaint, in September of 1975 defendants told Ms. Liebergesell that the bookkeeping was too complicated to keep track of her 20 percent share of the profits, so in lieu thereof the notes would all carry 18 percent interest. In early 1977 Mr. Kotowski informed her that until more of the dwellings could be rented or sold, he wanted to reduce the 18 percent interest on the notes to 12 percent. He then drew a note for $23,500 at the legal rate of 12 percent, dated February 24, 1977, which purported to consolidate defendants' indebtedness to Ms. Liebergesell. Plaintiff refused that note because it did not provide for attorney's fees in the event of suit. Had she accepted it and sued on it, defendants would be unable to claim usury. Instead, she brought suit on the previous notes for $23,500 plus interest accrued from January 7, 1977.

Defendants, relying on usury as an affirmative defense, sought to deduct $10,415.24 from the principal as a penalty, pursuant to RCW 19.52.030, of twice the amount of usurious interest paid to date, as well as the aggregate amount of unpaid interest at usurious rates.[1]

█ In order to assert the defense of usury defendants must prove the following elements by a preponderance of

---

[1]RCW 19.52.030(1) provides, in part, as follows:

"If a greater rate of interest than is allowed by statute shall be contracted for or received or reserved, the contract shall be usurious, but shall not, therefore, be void. If in any action on such contract proof be made that greater rate of interest has been directly or indirectly contracted for or taken or reserved, the creditor shall only be entitled to the principal, less the amount of interest accruing thereon at the rate contracted for; and if interest shall have been paid, the creditor shall only be entitled to the principal less twice the amount of the interest paid, and less the amount of all accrued and unpaid interest; and the debtor shall be entitled to costs and reasonable attorneys' fees plus the amount by which the amount he has paid under the contract exceeds the amount to which the creditor is entitled . . ."

the evidence: (1) a loan or forbearance; (2) money or its equivalent as the subject of the loan or forbearance; (3) an agreement that the principal shall be repayable absolutely; (4) the exaction of a rate of interest in excess of that allowed by law for the use of the money loaned or for the benefit of the forbearance; (5) an intention to violate the law. *Hafer v. Spaeth,* 22 Wn.2d 378, 382, 156 P.2d 408 (1945); *Manufacturers Acceptance Corp. v. Irving Gelb Wholesale Jewelers, Inc.,* 17 Wn. App. 886, 565 P.2d 1235 (1977).

▮ Plaintiff argues, first, that the advances of funds were made as part of a profit–sharing arrangement and are properly characterized as her part in a joint venture rather than a loan. In a joint venture, funds, property or labor are joined in a common purpose, in which each contributor has some right to direct the conduct of the others and losses as well as profits are to be shared. Repayment of money advanced is not required absolutely, but is contingent upon making a profit. *See Refrigeration Eng'r Co. v. McKay,* 4 Wn. App. 963, 973–74, 486 P.2d 304 (1971); *Martin v. Ajax Constr. Co.,* 124 Cal. App. 2d 425, 269 P.2d 132, 136–37 (1954). An advancement of funds for a joint venture is not a loan, and the defense of usury does not apply. *Moore v. Dealy,* 117 Cal. App. 2d 89, 254 P.2d 888 (1953); Annot., 16 A.L.R.3d 475 (1967). *See also Embola v. Tuppela,* 127 Wash. 285, 220 P. 789 (1923).

In this case, however, there is no evidence to support the assertion that plaintiff had a joint venture relationship with defendants. The notes themselves state an unconditional promise to pay principal and interest, which fits the definition of a loan: An advancement of money under a contract or agreement, express or implied, whereby the person to whom the advancement is made binds himself to repay it at some future time. *Hafer v. Spaeth, supra* at 384. Moreover, there is no indication of an agreement to share losses or that plaintiff had any say in the operation of defendants' remodeling activities.

■ Inasmuch as the transactions were loans of money to be repaid absolutely, and the notes stated on their face various rates of interest in excess of the legal rate of 12 percent (RCW 19.52.020), the next question is whether plaintiff had "an intention to violate the law" by contracting for the higher rates. Recently, in *Tacoma Commercial Bank v. Elmore*, 18 Wn. App. 775, 779–81, 573 P.2d 798 (1977), we explored in detail the nature of the intent necessary to establish usury and concluded that it is not intent of a culpable nature, but simply an intent to engage in a transaction which in fact carries a rate of interest forbidden by statute. *Accord, Maze v. Sycamore Homes, Inc.*, 230 Cal. App. 2d 746, 41 Cal. Rptr. 338, 16 A.L.R.3d 464 (1964); *Martin v. Ajax Constr. Co.*, 269 P.2d, at 136; *In re Estate of Dane*, 55 App. Div. 2d 224, 390 N.Y.S.2d 249 (1976). There is no indication whatever that Ms. Liebergesell lacked an intent to lend her money out at rates in excess of 12 percent. She was fully aware of the stated rates and does not appear to have objected to them. We are satisfied that she had the requisite intent.

■ Having established that the elements of usury are present, we turn to the question of whether defendants are estopped to raise that defense. There is a line of cases from several jurisdictions holding that a borrower's initiation of, or fraud contributing to, a usurious transaction estops the borrower from setting up the defense of usury, on the theory that he should not be allowed to take advantage of his own wrong. Annot., 16 A.L.R.3d 510, 513–16 (1967). The great majority of these cases, however, has involved borrowers who were attorneys and who drew the usurious notes involved, *e.g., Perry v. Shelby*, 196 Ark. 541, 118 S.W.2d 849 (1938); *Nikkel v. Lindhorst*, 85 Colo. 334, 276 P. 678 (1929); *Cohn v. Receivables Fin. Co.*, 123 Ill. App. 2d 224, 260 N.E.2d 67 (1970); *U.T. Hungerford Brass & Copper Co. v. Brigham*, 47 Misc. 240, 95 N.Y.S. 867 (1905), or borrowers who were employees or directors of the lending bank and should have been well aware of the legal rate of interest, *e.g., Blanks v. American Southern Trust Co.*, 177

Ark. 832, 9 S.W.2d 310 (1928); *Morris v. First Nat'l Bank,* 162 Ala. 301, 50 So. 137 (1909); *Gund v. Ballard,* 73 Neb. 547, 103 N.W. 309 (1905). Typical of the rationale underlying these cases is that expressed in *Cohn v. Receivables Fin. Co., supra* at 228:

> The obvious general purpose of the usury statutes, as they have been interpreted in many jurisdictions, is to protect the necessitous borrower from the unscrupulous lender. [*See Baske v. Russell,* 67 Wn.2d 268, 273, 407 P.2d 434 (1965).] This rationale, however, is not applicable in the context of the case now before us, where the borrower–fiduciary, by his own affirmative act, injected usury into the transaction and now seeks to take advantage of the penalty afforded to borrowers by statute. We hold that, because of his unconscionable acts in breach of the highest fiduciary obligation, defendant is estopped from affirmatively pleading the defense of usury.

(Citation omitted.) Absent a situation where the borrower asserting a usury defense is in a fiduciary relationship with the lender, such as attorney–client, or is in an occupation involving the lending of money, such as a banker, we are persuaded that the borrower must be guilty of fraudulent conduct in interjecting the usurious rate of interest into the transaction before he will be estopped to defend on grounds of usury. *Martin v. Ajax Constr. Co.,* 269 P.2d, at 136.

In the instant case, it is undisputed that Kotowski, who is an auditor for the State of Washington, prepared the usurious notes. He and plaintiff are alleged to have become well acquainted through their daughters, who were close friends. He is further alleged to have been the "business manager" for the housing renovation activities, whose advice in their dealings was relied on completely by plaintiff, a widowed schoolteacher. However, there is no allegation or other evidence that defendants fraudulently induced her to loan them money at usurious rates. Nor does plaintiff's version of the facts establish that she and defendants had a fiduciary relationship, the violation of which will estop defendants to raise the usury defense. We subscribe to the following definition of a fiduciary relationship:

[S]uch a relationship exists where there is a special confidence reposed in one, who by reason of such confidence, must act in good conscience and good faith and with due regard to the interests of the person reposing such confidence. It may exist as a matter of law between attorney-client, guardian–ward, trustee–beneficiary, and the like, or it may be the result of a more informal relationship—moral, social, domestic or even personal in its origin. [Citations omitted.] Where the relationship does not exist as a matter of law, the proof must be clear, convincing, and so strong, unequivocal, and unmistakable as to lead to but one conclusion.

*Swenson v. Wintercorn,* 92 Ill. App. 2d 88, 100, 234 N.E.2d 91, 97 (1968). A simple reposing of trust and confidence in the integrity of another does not make the latter a fiduciary; the relationship must be such as to induce the trusting party to relax the care and vigilance that he would ordinarily exercise for his own protection. *Moon v. Phipps,* 67 Wn.2d 948, 411 P.2d 157 (1966). The existence of friendship and the relationship of debtor and creditor do not of themselves establish a fiduciary relationship. *Guffey v. Washburn,* 382 Ill. 376, 46 N.E.2d 971 (1943).

Plaintiff's allegations portray her in a sympathetic light. She loaned large sums of money to defendants in the belief that they would return to her a share of profits and rates of interest not readily available elsewhere. That she had confidence in defendant Kotowski and his business judgment is demonstrated by her willingness to make the loans. Either she was unaware of the usury laws or, as seems less likely, was willing to accept the stated interest in the belief that matters would not deteriorate enough to bring a usury defense into play. We are willing to assume that Mr. Kotowski, as an auditor, knew the notes were usurious and, perhaps, the consequences of usury.

Plaintiff chooses to call her relationship with Mr. Kotowski "quasi–fiduciary" in nature. It is apparent, at least, that he had superior financial knowledge and that she had confidence in him. We do not, however, find in this

relationship the factors that would take it beyond that of friendly debtor and creditor and make him a fiduciary for her. Ms. Liebergesell is a schoolteacher and, therefore, an educated and intelligent woman. The record is void of any indication that plaintiff's trust in Mr. Kotowski was so complete and unqualified that she relaxed the ordinary vigilance she would be expected to have for the safety of the money loaned to him. In fact, her affidavit states that at one point she needed money and requested repayment of some of the funds then owing to her—indicating concern for her principal.

The usury statute works a harsh result in this case, because RCW 19.52.030 requires that the principal amounts due plaintiff, *i.e.,* $23,500, be reduced by twice the amount of interest paid her on the notes—apparently $5,207.62 x 2 = $10,415.24—plus any accrued and yet unpaid interest, and costs and attorney's fees. Obviously, the principal will be eroded significantly by these penalties, in a case which is quite outside the public policy of using them to protect helpless borrowers. *Baske v. Russell,* 67 Wn.2d 268, 273, 407 P.2d 434 (1965); RCW 19.52.005. Here the defendant/borrowers were far from helpless; they were in a position to propose whatever terms for the loans would induce Ms. Liebergesell to lend them her money rather than investing it elsewhere. The trial judge believed that they may have overreached Ms. Liebergesell, and he refused to allow the defense of usury to keep her claim from reaching a jury. We understand his point of view; but it has been often said that hard cases make bad law. As the notes are usurious, we can find no valid reason for precluding that defense and with great reluctance we must reverse the decision.

The denial of summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion. To assist in calculating the amount of judgment to which plaintiff may ultimately be entitled, the trial

court's attention is drawn to *Clausing v. Virginia Lee Homes, Inc.,* 62 Wn.2d 771, 776, 384 P.2d 644 (1963).

PETRIE and REED, JJ., concur.

Reconsideration denied July 2, 1979.

Review granted by Supreme Court October 12, 1979.