# Morris, *et al. v.* 1st National Bank of Samson.

*Assumpsit.*

(Decided May 20, 1909.   Rehearing denied June 30, 1909.
50 South. 137.)

1. *Partnership; Liability of Firm to Third Person.*—Where checks were drawn on the bank account of the firm by the bookkeeper of the firm. under the direction of one of the partners, and such checks were paid by the bank, and constituted overdrafts, each member of the firm is liable to the bank on the checks although they were drawn for the individual debt of the partner at whose instance they were drawn, and though the other partners had instructed the bookkeeper to draw no checks except for firm purposes.

2. *Same; Liabilities; Dissolution.*—Unless the bank had notice of the dissolution, the fact that the firm·had been dissolved when the check was drawn in the firm name by the bookkeeper at the instance of one of the partners on the bank with which the firm had been dealing. did not render the partners not liable to the bank which paid the check.

3. *Banks and Banking; Officers and Agent; Notice to Officer.*— The fact that a bookkeeper of a firm knew of the dissolution of the firm because of being such bookkeeper, was not notice to the bank of the dissolution although the bookkeeper of the firm was also assistant cashier and bookkeeper of the bank.

4. *Partnership; Liability of Firm; Estoppel.*—Where a partner directed the bookkeeper of the firm to draw a check of the firm to pay the individual debt of the partner, such partner was estopped to deny the bookkeeper's authority as against the bank which paid the check.

5. *Usury; Estoppel to Assert.*—Where the officers of a bank through its officers, authorizes one of the officers to lend money to a firm to which the officer belongs at the rate of 8 per cent., such

officer is estopped from charging the bank as for usury where he elected when dealing with himself to charge himself and his firm with a greater rate of interest than the bank officers authorized or required.

APPEAL from Geneva Circuit Court.

Heard before Hon. A. A. PEARCE.

Action by the First National Bank of Samson against J. J. Morris and W. T. Edge, late partners composing the firm of Samson Live Stock Company. Judgment for plaintiff, and defendants appeal. Affirmed.

The action was on account and for money loaned. The pleas were non assumpsit, nil debet, and set-off. The Samson Live Stock Company was a firm, composed of J. J. Morris and W. T. Edge. Griggs was the cashier and bookkeeper of the Samson Live Stock Company during its existence, and is also assistant cashier and bookkeeper of the bank. J. J. Morris was one of the members of the firm of the Samson Live Stock Company, and during the years 1906 and 1907 was cashier of the bank. Under the arrangement between the two, checks were drawn by Griggs as the bookkeeper of the live stock company and paid by Griggs as the assistant cashier and bookkeeper of the bank. The account is founded upon overdrafts composed of some of these checks so drawn and paid. The defendant offered to show that the live stock company was not indebted to some of the parties in whose favor the check was drawn, but that Edge individually was indebted to them, and these checks were drawn to pay his individual checks. The court refused to permit this evidence. It was shown by Griggs' testimony, and not disputed by Edge, that these checks were drawn by Edge's direction. Morris offered to testify that Griggs was instructed and authorized to draw checks to pay all debts of the Samson Live Stock Company, but was not authorized to draw any check for any sum not owing by the Samson Live Stock

Company. At the time. of the dissolution of the firm and the withdrawal of Morris therefrom, Griggs was, present and knew all about it. It is not made to appear from the record whether Morris was then connected with the bank or not.

J. J. MORRIS, and ESPY & FARMER, and TYSON, WILSON & MARTIN, for appellants.—Notice to Griggs of any matter within the scope of his authority was notice to the bank.—*Everett v. U. S.,* 6 Port 166; *Branch Bank v. Steele,* 10 Ala. 916; *Bir. T. Co. v. La. Nat. Bank,* 99 Ala. 379; 3 A. & E. Ency. of Law, 186; *Lee v. Iron B. Merc. Co.,* 147 Ala. 421; *White v. King,* 53 Ala. 162; 56 Ala. 177; 27 Ala. 336; 71 Ala. 240; 88 Ala. 583. The court erred in refusing to permit the defendant to testify that at the time. the check was drawn and paid the Samson Live Stock Co., had dissolved, and that it owed said Edge nothing, and that Griggs knew of said dissolution.—*Burwell v. Springfield,* 15 Ala. 273; *Hurt v. Clark,* 56 Ala. 91; *Nall v. McIntyre,* 31 Ala. 532; *Chambers v. Seay,* 87 Ala. 55. The affirmative charge should have been given for the defendant.—*Fountain v. Ware,* 56 Ala. 558; *White v. Farris,* 124 Ala. 507.

W. O. MULKEY, and W. R. CHAPMAN, for appellee.—Knowledge acquired by Griggs while acting as bookkeeper of defendant, and while representing the defendant could not be imputed to the bank even though Mr. Griggs was the instrument through which the checks were paid when presented to the bank.—*Traders I. Co. v. Letcher,* 143 Ala. 400; *C. of Ga. Ry. Co. v. Joseph,* 125 Ala. 319; *Patterson v. Irwin,* 42 Ala. 40; 10 Cyc. 1053, and cases there cited. Counsel discuss the other errors insisted on, but without citation of authority.

ANDERSON, J.—The checks were drawn for the Samson Live Stock Company, a firm composed of Morris and Edge, by Griggs, the bookkeeper of said firm, and who was also assistant cashier of the plaintiff bank, and upon the order and direction of one of the partners, Edge. It was therefore immaterial as to the instructions given Griggs by Morris, as between the firm and third persons, as Edge had as much authority to direct the bookkeeper as his copartner, Morris, and, when the checks were drawn upon the direction of one of the partners and were paid by the bank, they became a valid claim against the firm and each member thereof, regardless of the previous instructions from Morris to Griggs.

It was also immaterial that the firm had been dissolved when the last check was drawn and paid by the bank, unless the bank had notice of the dissolution, as it had been dealing with said firm, and the individual partners were liable for the debts contracted, even after dissolution, unless the bank had notice of said dissolution. True, the defendants proposed to show that Griggs had notice of the dissolution; but Griggs occupied a dual position, and the notice he may have acquired as bookkeeper of the defendants could not be imputed to the bank.—*Traders' Ins. Co. v. Letcher,* 143 Ala. 400, 39 South. 271; *Cen. Ry. of Ga. v. Joseph,* 125 Ala. 319, 28 South. 35; *Patterson v. Irvin,* 142 Ala. 401, 38 South. 121. The defendants did not propose to prove that the bank had notice of the dissolution, or that Griggs got notice while acting for the bank. If he knew of the dissolution because of being bookkeeper for the defendants, notice thus acquired was not binding on the bank. To have put the trial court in error, defendants should have proposed to show that the bank, or that Griggs, as agent of the bank, had notice of the dissolution, as notice to Griggs, who was also bookkeeper of the defendants, was

[Jenkins v. McGeever, et al.]

not of itself sufficient to charge the bank with notice. Nor can the defendants complain of not letting Morris testify that the officers of the bank authorized him to lend the money to the stock company at 8 per cent., as that would exonerate the bank from responsibility for the usurious feature of the transaction, inasmuch as Morris was dealing with himself, and, if he saw fit to charge himself or his firm with a greater interest than the officers authorized or required, he is estopped from charging the bank with usury. Not only did Morris have the authority, as a partner, to bind or estop the firm, but Edge was also estopped from questioning Griggs' authority to draw the checks in question; as they were drawn at his instance.

The judgment of the circuit court is affirmed.

Affirmed.

DOWDELL, C. J., and McCLELLAN and SAYRE, JJ., concur.


